J-S03024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN BROCK | : | |
| | : | |
| Appellant | : | No. 943 EDA 2018 |

Appeal from the Judgment of Sentence January 25, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004626-2016

BEFORE: BENDER, P.J.E., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                     **FILED APRIL 03, 2019**

Appellant, John Brock, appeals from the judgment of sentence entered on January 25, 2018, as made final by the denial of Appellant's post-sentence motion on March 26, 2018. In this appeal, Appellant's court-appointed counsel has filed both a petition for leave to withdraw as counsel and an accompanying brief pursuant to **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). We conclude that Appellant's counsel has complied with the procedural requirements necessary to affect withdrawal. Moreover, after independently reviewing the record, we conclude that the instant appeal is wholly frivolous. We, therefore, grant counsel's petition for leave to withdraw and affirm Appellant's judgment of sentence.

At approximately 6:00 on the morning of January 17, 2016, Appellant walked into the Station House Transitional Shelter (hereinafter "the Shelter")

and began shooting. Appellant shot Edward Barksdale five times, killing him; Appellant also shot at L.B. twice, hitting him once and seriously injuring him.

At the time of the shooting, Appellant had been a resident of the Shelter for approximately two months. N.T. Trial, 1/23/18, at 122. L.B. was an employee of the Shelter and knew Appellant prior to the shooting. *Id.* at 121. L.B. testified that, immediately before the shooting, L.B. was standing in the Shelter's front office desk and was speaking with Mr. Barksdale, who was also an employee of the Shelter; also present at the time was Derrick Cross, who was a resident of the Shelter. *Id.* at 123-124. L.B. testified that they were having a conversation when "[Appellant] came in, said nothing, pulled out [a handgun] and started firing" at Mr. Barksdale. *Id.* at 124-125. As L.B. testified, when Appellant began firing at Mr. Barksdale, L.B. turned and ran down a hallway. *Id.* at 128-129. However, while he was running, he was shot in the left buttock and fell to the ground. *Id.* at 129 and 134. L.B. testified that he got up, ran into a bedroom, and called 911. *Id.* at 130 and 132. He testified that he identified Appellant, by name, as the lone shooter on the 911 call. *Id.* at 132.

Among other people who testified at Appellant's trial were Derrick Cross and Rakim Jordan. In his testimony, Derrick Cross positively identified Appellant as the individual who shot and killed Mr. Barksdale. N.T. Trial, 1/24/19, at 9. Mr. Cross also testified that, after Appellant shot Mr. Barksdale five times, he witnessed Appellant run after L.B. and fire two more shots. *Id.* at 10-11. Rakim Jordan testified that he was present in the Shelter at the

- 2 -

time of the shooting. Mr. Jordan testified that he heard gunshots, looked out of his room door, and saw L.B. running down the hall, with Appellant chasing after him. *Id.* at 71-75. Further, Mr. Jordan testified that he later saw Appellant leaving the Shelter with a gun in his hand. *Id.* at 75-76.

The jury found Appellant guilty of first-degree murder, attempted murder, aggravated assault, firearms not to be carried without a license, and possessing instruments of crime.[1] N.T. Trial, 1/25/18, at 143-144. On January 25, 2018, the trial court sentenced Appellant to serve the mandatory term of life in prison without the possibility of parole for his first-degree murder conviction.[2] N.T. Sentencing, 1/25/18, at 151.

Following the denial of Appellant's post-sentence motion, Appellant filed a timely notice of appeal. On appeal, Appellant's court-appointed counsel filed a petition for leave to withdraw and counsel accompanied this petition with an *Anders* brief. The *Anders* brief raises 12 claims:

> 1. The trial court erred by denying Appellant's request that trial counsel be relieved and new counsel be appointed to represent him at trial and for not conducting a colloquy of Appellant with respect to whether he accepted trial counsel as his attorney.

---

[1] 18 Pa.C.S.A. §§ 2502(a), 901(a), 2702(a), 6106(a)(1), and 907(a), respectively.

[2] The trial court also sentenced Appellant to serve a concurrent term of ten to 20 years in prison for his attempted murder conviction. N.T. Sentencing, 1/25/18, at 151.

2. The trial court erred by refusing Appellant's request that the trial be continued so that he could prepare to represent himself at trial.

3. The sentence of life imprisonment imposed on Appellant is illegal because it lacks a statutory basis.

4. The trial court lacked subject matter jurisdiction to try Appellant because the Crimes Code was not adopted by the Pennsylvania State Legislature and because the information charging him was defective.

5. Appellant was not tried by a jury of his peers because the jury was not comprised of persons residing in the area of Broad Street and Lehigh Avenue and because the prospective juror pool was not composed of persons residing in that area.

6. Trial counsel was ineffective for reasons set forth in Appellant's *pro se* filing of February 16, 2018.

7. Trial counsel was ineffective because he did not present argument in the post-sentence motion he filed asserting that the verdict was against the weight of the evidence and that the evidence was insufficient to sustain the charges.

8. Trial counsel was ineffective for not sufficiently discussing with Appellant the pros and cons of accepting the Commonwealth's offer in exchange [for] a guilty plea.

9. The trial court committed an abuse of discretion by refusing to give a **Kloiber** charge.

10. The trial court erred by entering a plea of not guilty to the charge of third-degree murder when Appellant refused to enter a plea.

11. The verdicts were against the weight of the evidence and the evidence was insufficient to sustain the convictions because of inconsistencies in the descriptions of the shooter given by various witnesses.

12. Appellant's sentence is illegal because the trial court refused to advise Appellant of the statute under which it was

- 4 -

sentencing Appellant and because the court did not convene a sentencing hearing pursuant to 42 [Pa.C.S.A.] § 9711.

Appellant's Brief at 18-50 (some capitalization omitted).

Before reviewing the merits of this appeal, this Court must first determine whether appointed counsel has fulfilled the necessary procedural requirements for withdrawing as counsel. *Commonwealth v. Miller*, 715 A.2d 1203, 1207 (Pa. Super. 1998).

To withdraw under *Anders*, court-appointed counsel must satisfy certain technical requirements. First, counsel must "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous." *Miller*, 715 A.2d at 1207. Second, counsel must file an *Anders* brief, in which counsel:

> (1) provide[s] a summary of the procedural history and facts, with citations to the record; (2) refer[s] to anything in the record that counsel believes arguably supports the appeal; (3) set[s] forth counsel's conclusion that the appeal is frivolous; and (4) state[s] counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Finally, counsel must furnish a copy of the *Anders* brief to his or her client and advise the client "of [the client's] right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention." *Commonwealth v. Woods*, 939 A.2d 896, 898 (Pa. Super. 2007).

If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." ***Santiago***, 978 A.2d at 355 n.5; ***see also Commonwealth v. Yorgey***, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*) (holding that the ***Anders*** procedure requires this Court to review "the entire record with consideration first of the issues raised by counsel. . . . [T]his review does not require this Court to act as counsel or otherwise advocate on behalf of a party. Rather, it requires us only to conduct a review of the record to ascertain if[,] on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated. We need not analyze those issues of arguable merit; just identify them, deny the motion to withdraw, and order counsel to analyze them"). It is only when all of the procedural and substantive requirements are satisfied that counsel will be permitted to withdraw.

In the case at bar, counsel complied with all of the above procedural obligations. We must, therefore, review the entire record and analyze whether this appeal is, in fact, wholly frivolous. Our review begins with the claims raised in the ***Anders*** brief.

First, Appellant claims, the trial court erred when it denying his request that "trial counsel be relieved and new counsel be appointed to represent him at trial." Appellant's Brief at 18.

- 6 -

"Both the right to counsel and the right to self-representation are guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section Nine of the Pennsylvania Constitution." *Commonwealth v. Phillips*, 93 A.3d 847, 851 (Pa. Super. 2014) (citation omitted). "A motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons." Pa.R.Crim.P. 122(C). "To satisfy this standard, a defendant must demonstrate that he has an irreconcilable difference with counsel that precludes counsel from representing him." *Commonwealth v. Keaton*, 45 A.3d 1050, 1070 (Pa. 2012) (quotations and citations omitted). As this Court explained, "the right to appointed counsel does not include the right to counsel of the defendant's choice. Rather, the decision to appoint different counsel to a requesting defendant lies within the discretion of the trial court." *Commonwealth v. Smith*, 69 A.3d 259, 266 (Pa. Super. 2013) (quotations and citations omitted).

Appellant requested that the trial court change his trial counsel twice: first in a *pro se* letter that Appellant addressed to the trial court approximately two months before his trial was scheduled to begin and, second, on the day his trial commenced. *See* N.T. Hearing, 12/5/17, at 2-3; N.T. Trial, 1/22/18, at 3-6. During the hearings on Appellant's motions, Appellant never claimed that he and trial counsel were experiencing irreconcilable differences. *See* N.T. Hearing, 12/5/17, at 2-18; N.T. Trial, 1/22/18, at 3-42. Rather, during the hearings, Appellant merely declared that he was dissatisfied with certain

aspects of his trial counsel's performance, such as: Appellant and trial counsel were having trouble communicating with one another; trial counsel was not acting on Appellant's requests as quickly as Appellant would have preferred; trial counsel did not review all documents in the case with Appellant; trial counsel did not meet with Appellant in person to go over discovery materials; and, trial counsel "sp[oke] to [Appellant] in a very vague manner." **See** N.T. Hearing, 12/5/17, at 4 and 9; N.T. Trial, 1/22/18, at 9, 11, and 17.

This Court has affirmed trial courts' denial of motions for new counsel in circumstances in which the attorney-client relationship deteriorated far beyond that in the case at bar. For example, in **Commonwealth v. Neal**, 563 A.2d 1236 (Pa. Super. 1989), the defendant sought removal of trial counsel because she failed to file pretrial motions that the defendant requested and because she failed to meet with the defendant for the length of time he preferred. **Id.** at 1239–1240. The trial court denied the motion for appointment of new counsel and this Court affirmed that determination. **See id.** at 1242–1243.

In **Commonwealth v. Chew**, 487 A.2d 1379 (Pa. Super. 1985), the defendant "became dissatisfied with his counsel . . . because of a difference of opinion regarding strategy and because of what [the defendant] perceived as inadequate preparation for trial. This dissatisfaction continued at the time of trial. Shortly before trial started, [the defendant] spit in the face of his lawyer." **Id.** at 1383. This Court affirmed the denial of appointment of new counsel, holding that "differences of opinion concerning strategy or the brevity

of pre-trial communications does not compel the appointment of new counsel."

*Id.* Combined, **Neal** and **Chew** indicate that the complaints Appellant raised

at the evidentiary hearings on his request for appointment of new counsel do

not rise to the level of irreconcilable differences. **See also Commonwealth**

**v. Knapp**, 542 A.2d 546, 549 (Pa. Super. 1988) ("'mere dissatisfaction' with

appointed counsel is inadequate to establish 'good cause shown'"). As such,

Appellant's first claim on appeal is frivolous.[3]

Next, Appellant claims that the trial court "erred by refusing Appellant's

request that the trial be continued so that he could prepare to represent

himself at trial." Appellant's Brief at 25.

As our Supreme Court has explained:

> Appellate review of a trial court's continuance decision is
> deferential. The grant or denial of a motion for a continuance
> is within the sound discretion of the trial court and will be
> reversed only upon a showing of an abuse of discretion. As
> [the Pennsylvania Supreme Court has] consistently stated,
> an abuse of discretion is not merely an error of judgment.
> Rather, discretion is abused when the law is overridden or
> misapplied, or the judgment exercised is manifestly

---

[3] Appellant also claims that the trial court erred when it did not "conduct[] a
colloquy of Appellant with respect to whether he accepted trial counsel as his
attorney." Appellant's Brief at 18. Appellant did not raise this claim before
the trial court. Therefore, Appellant waived this claim. Pa.R.A.P. 302(a)
("[i]ssues not raised in the lower court are waived and cannot be raised for
the first time on appeal"). Further, since the claim on appeal is waived, the
claim is frivolous under **Anders**. **Commonwealth v. Tukhi**, 149 A.3d 881,
888-889 (Pa. Super. 2016) (holding that, under **Anders**, "[a]n issue that is
waived is frivolous"); **Commonwealth v. Kalichak**, 943 A.3d 285, 291 (Pa.
Super. 2008) (holding: "this issue has been waived. Having been waived,
pursuing this matter on direct appeal is frivolous").

unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.

. . .

Just as a criminal defendant has a constitutional right to counsel, so too does the defendant have a long-recognized constitutional right to dispense with counsel and to defend himself before the court. The right to self-representation, however, is not absolute.

. . .

[The Pennsylvania Supreme] Court has recognized that a request to proceed *pro se* must be made in a timely fashion, and not for purposes of delay, and the request must be clear and unequivocal. Obviously, defendants should not be permitted to unreasonably clog the machinery of justice or hamper and delay the effort to administer justice effectively.

***Commonwealth v. Brooks***, 104 A.3d 466, 469 and 474-475 (Pa. 2014) (quotations and citations omitted).

Appellant first requested permission to proceed *pro se* on January 22, 2018 – which was the first day of trial. The request followed the trial court's reaffirmation of its December 5, 2017 order, which denied Appellant's request to appoint new trial counsel. ***See*** N.T. Trial, 1/22/18, at 6. As Pennsylvania Rule of Criminal Procedure 106(D) states:

A motion for continuance on behalf of the defendant shall be made not later than 48 hours before the time set for the proceeding. A later motion shall be entertained only when the opportunity therefor did not previously exist, or the defendant was not aware of the grounds for the motion, or the interests of justice require it.

Pa.R.Crim.P. 106(D).

- 10 -

Appellant knew on December 5, 2017 that the trial court was not going to grant his request for new counsel. Appellant's January 22, 2018, morning-of-trial request for a continuance to proceed *pro se* was, thus, untimely under Rule 106(D). Appellant's request was made after "the time set for the" trial and, since Appellant knew that the trial court was not going to grant his request for new counsel, the opportunity for Appellant's request to proceed *pro se* "previously existed," Appellant was well aware of the grounds for the motion, and the interests of justice did not require a continuance. **See id.** Further, we note that the trial court was well-aware of the circumstances surrounding Appellant's request for a continuance, of Appellant's perpetual inability to cooperate with any counsel, and of Appellant's delay tactics. **See** N.T. Trial, 1/22/18, at 5-6 (the trial court declared: "There were problems between you and [your prior attorney, Samuel Stretton, Esquire] and it is on the record. So that is him. Now we have [your current trial counsel, Jeffrey Azzarano, Esquire]. . . . I am not removing Mr. Azzarano. We will be in the same spot six months from now if I remove him. So we are proceeding to trial").

Considering the totality of the circumstances in this case, we conclude that the trial court did not abuse its discretion when it denied Appellant's request for a continuance and that Appellant's claim on appeal is frivolous. **See Brooks**, 104 A.3d at 478-479 (holding that, considering the totality of the circumstances, the trial court did not abuse its discretion when it denied

the defendant's "day-of-trial request for a continuance, so that he could represent himself").

Next, Appellant claims that his sentence of life imprisonment "is illegal because it lacks a statutory basis." Appellant's Brief at 28. This claim is frivolous, as 18 Pa.C.S.A. § 1102 and 42 Pa.C.S.A. § 9711 provide the statutory basis for Appellant's sentence of life imprisonment. *See* 18 Pa.C.S.A. § 1102(a)(1) ("a person who has been convicted of a murder of the first degree . . . shall be sentenced to death or to a term of life imprisonment in accordance with 42 Pa.C.S. § 9711"); 42 Pa.C.S.A. § 9711(a)(1) (provides only two sentencing alternatives for a first-degree murder conviction: death or life imprisonment).

Fourth, Appellant claims that the trial court "lacked subject matter jurisdiction to try Appellant because the Crimes Code was not adopted by the Pennsylvania State Legislature and because the information charging him was defective." Appellant's Brief at 29. Essentially, Appellant claims that the trial court lacked subject matter jurisdiction over his case and that the information was defective because Appellant was charged with violating the Pennsylvania Crimes Code, which is Purdon's Title 18, rather than violating Pennsylvania Pamphlet Law, which is the true positive law of Pennsylvania.[4] *See id.* This

---

[4] The Commonwealth Court of Pennsylvania has explained:

> Pennsylvania Consolidated Statutes are official codifications that are enacted by the General Assembly. By contrast, the

claim is frivolous. Indeed, in a prior case, the Court of Common Pleas of Bucks County ably disposed of the claim Appellant currently raises:

> There are "two requirements for subject matter jurisdiction as it relates to criminal defendants: the competency of the court to hear the case, and the provision of formal notice to the defendant of the crimes charged in compliance with the

_____

> unofficial codification and annotation of Pennsylvania's Pamphlet Laws, known as Purdon's, is the work product of the West Publishing Company.
>
> Because Pennsylvania's Pamphlet Laws are organized by chronology, not subject, Purdon's has long served legal practitioners. As Judge Robert E. Woodside has explained:
>
>> Much of our law, civil and criminal, developed in the past century as part of the common law, but during this century more and more statutes replaced the common law. Unlike the so-called "code states" which from their formation depended solely upon an organized single code containing all the statutory law of that state, Pennsylvania's statutes "grew like Topsy." As a result, the only way to find the statutes on a particular subject was through digests such as West's Statutes and, more recently, Purdon's Pennsylvania Statutes. Purdon's has [served] the profession well becoming "the Bible" of the statutory law, but the "official" statutes are in the Pamphlet Laws and not Purdon's.
>
> ROBERT E. WOODSIDE, PENNSYLVANIA CONSTITUTIONAL LAW 307 (1985). . . . Accordingly, while Purdon's has been the key to finding statutory law in Pennsylvania, it is not itself positive law. By contrast, Pennsylvania's official codification of its statutes is positive law.

*In re Appeal of Tenet Health Sys. Bucks County, LLC*, 880 A.2d 721, 725 (Pa. Cmwlth. 2005) (footnote and emphasis omitted).

> Sixth Amendment of the United States Constitution and Article I, Section 9, of the Pennsylvania Constitution." ***Commonwealth v. Jones***, 929 A.2d 205, 210 (Pa. 2007).
>
> "[T]he courts of common pleas have statewide jurisdiction in all cases arising under the **Crimes Code**." ***Id.*** (emphasis added). This court believes that such a statement by the highest court in this Commonwealth makes it clear that reference to the Crimes Code rather than Pamphlet Law is perfectly acceptable and this court was not deprived of jurisdiction in this matter "because the defendant was charged with numerous violations of the Pennsylvania Crimes Code (Purdon's title 18) rather than alleging violations of the true law of Pennsylvania, which is Pennsylvania Pamphlet Law."
>
> Furthermore, as long as a defendant receives formal notice, even the lack of a proper criminal indictment will not deprive the trial court of subject matter jurisdiction. ***Id.*** Therefore, even if appellant is correct that there is something inappropriate about referring to the Crimes Code, the defendant still received clear notice of the charges against him. Accordingly, [the claim] is devoid of merit.

***Commonwealth v. Hines***, 4 Pa. D. & C. 5th 389, 395 (C.C.P. Bucks Cty. 2008).

We agree with the above analysis and conclude that Appellant's claim on appeal is frivolous.

Fifth, Appellant claims that he was not "tried by a jury of his peers because the jury was not comprised of persons residing in the area of Broad Street and Lehigh Avenue and because the prospective juror pool was not composed of persons residing in that area." Appellant's Brief at 32-33. Appellant did not raise this claim before the trial court. Therefore, Appellant waived this claim. Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"). And, since the

claim on appeal is waived, the claim is frivolous under **Anders**. **Tukhi**, 149 A.3d at 888-889 (holding that, under **Anders**, "[a]n issue that is waived is frivolous"); **Kalichak**, 943 A.3d at 291 (holding: "this issue has been waived. Having been waived, pursuing this matter on direct appeal is frivolous").

Appellant's sixth, seventh, and eighth claims raise challenges to his trial counsel's effectiveness. These claims are unreviewable on direct appeal. **Commonwealth v. Grant**, 813 A.2d 726, 738 (Pa. 2002) ("as a general rule, a [defendant] should wait to raise claims of ineffective assistance of trial counsel until collateral review"); **Commonwealth v. Holmes**, 79 A.3d 562, 620 (Pa. 2013) ("absent [certain, specified] circumstances [(that are inapplicable to the case at bar)] claims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal"). Appellant's claims are thus frivolous.

Ninth, Appellant claims that the trial court erred when it refused to give a **Kloiber**[5] charge.

"A **Kloiber** instruction informs the jury that an eyewitness identification should be viewed with caution when either the witness did not have an opportunity to view the defendant clearly, equivocated on the identification of the defendant, or has had difficulties identifying the defendant on prior occasions." **Commonwealth v. Pander**, 100 A.3d 626, 635 (Pa. Super.

---

[5] **Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954).

2014) (*en banc*) (citation omitted). "We evaluate whether a ***Kloiber*** instruction is necessary under an abuse of discretion standard." ***Commonwealth v. Sanders***, 42 A.3d 325, 332–333 (Pa. Super. 2012).

During trial, Appellant objected to the trial court's jury instructions and, specifically, to the absence of the ***Kloiber*** charge. ***See*** N.T. Trial, 1/25/18, at 139. Thus, Appellant preserved the current claim of error. Nevertheless, Appellant's claim is frivolous because every witness who identified Appellant as the shooter testified that they had a clear view of Appellant's face at the time of the shooting and no witness "equivocated on the identification of [Appellant or had] difficulties identifying [Appellant] on prior occasions." ***See*** ***Pander***, 100 A.3d at 635. Therefore, Appellant was not entitled to a ***Kloiber*** charge and his claim to the contrary is frivolous.

Next, Appellant claims that the trial court erred when it "entered a plea of not guilty to the charge of third-degree murder . . . when [Appellant] refused to enter a plea to that charge." Appellant's Brief at 39. This claim is waived, as Appellant did not object to the trial court's action at trial. ***See*** N.T. Trial, 1/23/18, at 20-32; Pa.R.A.P. 302(a). The appellate claim is thus frivolous. ***See Tukhi***, 149 A.3d at 888-889.

For Appellant's eleventh claim on appeal, Appellant contends that the verdicts were against the weight of the evidence and the evidence was insufficient to sustain the convictions "because the witnesses who identified him at trial gave prior inconsistent descriptions of him." Appellant's Brief at 42. These claims are waived, as Appellant's post-sentence motion consisted

of mere boilerplate language. Appellant's Post-Sentence Motion, 1/26/18, at 1 ("[Appellant] hereby alleges the following errors/challenges to his conviction/judgment of sentence, and seeks a new trial based on same: (a) The evidence presented at trial was insufficient to sustain a conviction on all counts; (b) The guilty verdicts were against the clear weight of the evidence"); **Commonwealth v. Holmes**, 461 A.2d 1268, 1270 (Pa. Super. 1983) (*en banc*) ("a post-verdict motion, either that 'the evidence was insufficient to support the verdict,' or that 'the verdict was against the weight of the evidence,' [preserves] no issue for appellate review unless the motion goes on to specify in what respect the evidence was insufficient, or why the verdict was against the weight of the evidence").

Finally, Appellant claims that his sentence is illegal because "the trial court refused to advise Appellant of the statute under which it was sentencing [him] and because the [trial] court did not convene a sentencing hearing pursuant to 42 Pa.C.S. § 9711." These claims are frivolous because: nothing requires a trial court to "advise Appellant of the statute under which it was sentencing" him and, since the Commonwealth elected not to pursue the death penalty in this case, the only sentence that the trial court could have imposed for Appellant's first-degree murder conviction was life imprisonment. **See** 18 Pa.C.S.A. § 1102(a)(1) and 42 Pa.C.S.A. § 9711(a).

We have independently considered the claims raised within Appellant's brief and we have determined that the claims are frivolous. We have also considered Appellant's *pro se* response to the **Anders** brief, which either

reiterates the claims raised in the ***Anders*** brief or lists claims without providing argument. The former claims have been discussed in this memorandum; the latter claims do not merit additional discussion. Further, after an independent review of the entire record, we see nothing that might arguably support this appeal. The appeal is therefore wholly frivolous. Accordingly, we affirm Appellant's judgment of sentence and grant counsel's petition for leave to withdraw.

Petition for leave to withdraw appearance granted. Appellant's Petition for Writ of Habeas Corpus ad Subjiciendum denied. Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/3/19